Certiorari Denied, January 24, 2017, No. S-1-SC-36237;
Conditional Cross-Petition Denied, January 24, 2017, No. S-1-SC-36237

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2017-NMCA-020

Filing Date: November 28, 2016

Docket No. 33,709

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

RAMON HERNANDEZ,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Gerald E. Baca, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**GARCIA, Judge.**

**{1}** Defendant Ramon Hernandez appeals his convictions for homicide by vehicle, contrary to NMSA 1978, Section 66-8-101(A) (2004, amended 2016), great bodily harm by vehicle, contrary to Section 66-8-101(B), and reckless driving, contrary to NMSA 1978,

Section 66-8-113(A) (1987). Defendant asserts that (1) the district court erred in failing to grant a mistrial following improper testimony regarding excluded evidence by New Mexico State Police Officer Mario Vasquez; (2) prosecutorial misconduct bars retrial; (3) the district court erroneously admitted Defendant's conversation with a visitor that was recorded while Defendant was incarcerated; (4) there was insufficient evidence to prove Defendant drove at the time of the accident or that Defendant's conduct was reckless; (5) the district court's findings were insufficient to support its classification of homicide by vehicle as a serious violent offense; (6) cumulative error in the district court's evidentiary rulings deprived Defendant of a fair trial; and (7) Defendant's conviction for reckless driving violates the prohibition against double jeopardy. We hold that the improper testimony regarding the purported confession was extremely prejudicial and warranted a mistrial. We also hold that the prosecutor's conduct did not rise to a level that would bar retrial and that there was sufficient other evidence to support Defendant's convictions. We remand for a new trial. Retrial obviates the need to address Defendant's remaining arguments raised on appeal. Accordingly, we reverse Defendant's three convictions and remand for a new trial.

**BACKGROUND**

**{2}**     On June 10, 2012, there was a two-car collision on southbound I-25 near Exit 307 in San Miguel County, New Mexico. Defendant and Domingo Gonzales were in one car, a Pontiac sedan. Victims Aileen and Zachary Smith ("the Smiths" collectively or "Female Victim" and "Male Victim" respectively when referred to as individuals) were in the other car, a Suzuki SUV. Male Victim was driving in the right lane when the Pontiac entered the highway at a low rate of speed. Male Victim signaled and moved the Suzuki into the left lane to avoid the slow-moving Pontiac. The Pontiac left its lane and was headed in a horizontal direction toward the left lane where the Suzuki was driving. Male Victim tried to avoid the Pontiac, the two cars collided, nearly perpendicular. The right front of the Suzuki hit the driver's side of the Pontiac, near the front end, and the airbags in the Suzuki deployed.

**{3}**     Shortly after the collision, Jorge Acosta, a passerby, stopped to help. Acosta observed two people emerge from the driver's side window of the Pontiac. The first person, who was later identified as Gonzales, walked away from the scene of the accident. The second person was identified as Defendant. Acosta did not observe who had been driving the Pontiac, but Defendant told him that "the one who had run was the one who had driven." Throughout the investigation and in his conversations with the first responders, Defendant maintained that he was not the driver of the Pontiac. He stated to a first responder that "he did not know" who was driving and told officers that Gonzales was driving at the time of the accident.

**{4}**     Female Victim was seven months pregnant at the time of the accident. Her water broke on scene and she began to have severe contractions. Male Victim called 911. Female Victim was trapped in the car but first responders freed her and took her to the hospital. There, doctors performed an emergency cesarean delivery. A baby boy (Baby) was born alive but was not breathing and soon died from blunt force injuries and prematurity. Female Victim also suffered other significant injuries with permanent effects. The Smiths had one

2

child after the accident, but doctors advised against any more children due to Female Victim's ongoing health risks associated with the accident. Male Victim's injuries were not as serious and healed without lasting consequence.

{5}     Ultimately, Defendant was charged with multiple crimes related to the collision, including homicide by vehicle, great bodily harm by vehicle, driving under the influence of intoxicating liquor or drugs, and reckless driving. The State alleged that Defendant was the driver of the Pontiac at the time of the accident.

{6}     By the time of trial, Gonzales was not available to testify because he was deceased. No statements from Gonzales were introduced as evidence. Evidence introduced at trial included the following: (1) a recorded conversation between Defendant and a visitor at the jail, with Defendant making remarks the State alleges imply that Defendant was the driver based upon a reference to his location in the vehicle; (2) accident reconstruction testimony; (3) DNA evidence taken from the Pontiac and compared against Defendant and Gonzales; and (4) testimony from witnesses on scene and investigative officers, including improper testimony from New Mexico State Police Officer Mario Vasquez that Defendant had confessed to another officer about being "behind the wheel" at the time of the accident. Officer Vasquez's "behind the wheel" hearsay testimony was specifically excluded by a pretrial motion in limine, but after failing to adhere to the court's admonishment at trial, it was ultimately excluded again by a curative instruction to the jury to "disregard that statement [by Officer Vasquez] and to not consider it for any purpose."

{7}     The jury convicted Defendant of homicide by vehicle (based upon evidence of reckless driving), great bodily harm by vehicle (also based upon evidence of reckless driving), and reckless driving. The jury acquitted Defendant of driving under the influence of intoxicating liquor or drugs.

{8}     Defendant appeals, raising numerous issues. We address three of the issues raised: (1) whether the district court should have granted a mistrial following the improper reference by Officer Vasquez to the excluded confession; (2) whether alleged prosecutorial misconduct bars retrial; and (3) whether there was sufficient evidence to support Defendant's convictions and remand for a new trial.

**DISCUSSION**

**I.     Mistrial**

**A.     The Purported Confession Testimony**

{9}     We address whether the district court erred when it failed to grant a mistrial based on Officer Vasquez's improper trial testimony that Defendant allegedly confessed to being "behind the wheel" at the time of the accident. Prior to testifying at trial, Officer Vasquez had been admonished that no such confession was ever made to Agent Gomez and, as a

result, this purported confession was excluded from the State's evidence as inadmissible hearsay and was not to be mentioned at trial.

**{10}** Officer Vasquez previously prepared a written report stating Agent Gomez told him that Defendant admitted to being the driver. However, Agent Gomez specifically refuted the existence of any such purported confession as well as any alleged statement made to Officer Vasquez. Accordingly, the parties agreed and stipulated that Defendant had never admitted to Agent Gomez that he was the driver at the time of the collision. Therefore, the purported statement in Officer Vasquez's report was hearsay, factually incorrect, and prejudicial to Defendant. Prior to trial, Defendant moved in limine to exclude any such testimony regarding the purported confession as both factually incorrect and as prejudicial hearsay. The district court granted Defendant's motion, agreeing that what Officer Vasquez had written in his report about a purported confession constituted inadmissable hearsay. Defense counsel cautioned the district court and the State that any such testimony from Officer Vasquez would be "undoable" and a mistrial issue. The district court then specifically directed the State to confer with Officer Vasquez and stated, "I want it understood by [Officer Vasquez] that he's not to be repeating what [Agent] Gomez told him occurred" and to "make sure that he is clear he's not to testify to any hearsay."

**{11}** At trial, prior to Officer Vasquez's testimony, the prosecutor reconfirmed and acknowledged the district court's previous directive that it admonish Officer Vasquez not to testify as to anything he was told by Agent Gomez. The district court responded, "I just want to make sure because . . . I don't want to end up with a mistrial at this point in time." After Officer Vasquez was called to testify and improperly testified regarding Defendant being incarcerated, the district court issued another warning and put the State on further notice that "[Officer Vasquez] likes to spit out a lot of information at a time, so be real careful with the questions and be real specific with him." Nonetheless, just moments later the following exchange occurred with Officer Vasquez.

| | |
|---|---|
| Prosecutor: | We talked about the search of the vehicle and the search warrant for [D]efendant and then you interviewed, well, actually Agent Gomez interviewed [D]efendant. |
| Officer Vasquez: | That is correct. |
| Prosecutor: | Okay, what was your next step after that in your investigation? |
| Officer Vasquez: | In our investigation, uh, like I said, we were outside of the interview room while Agent Gomez said [Defendant] were speaking. Um, Mr. Um, Agent Gomez came out and stated that there was a confession of being behind the wheel. |

4

**{12}** Following this exchange, the district court immediately recognized the error that had occurred and excused the jurors from the courtroom. Once the jury was removed, the district court began by stating that

> There was a motion in limine with respect to what [Officer Vasquez'] testimony would and would not be with respect to statements being made by [D]efendant to Agent Gomez . . . and specifically the issue with respect to this statement of confession. . . . [I]t was ordered by the court that no such statement would be made and that the [S]tate would admonish and do whatever it needed to do with this witness to make sure that [it] didn't come out. It did come out. There was no [immediate] objection by the defense but I heard it. I know the jury heard it, and it was something that I ordered not to happen. I need to hear from the [S]tate why I shouldn't declare a mistrial at this time.

The prosecutor acknowledged that the court's order was violated but argued that a mistrial was not warranted, asked for a curative instruction, and suggested that the issue be addressed through cross-examination of Officer Vasquez. Defense counsel argued that a curative instruction was not sufficient and asked for a mistrial. The district court orally ruled that there was "[no] manifest necessity" for a mistrial and that "[i]t's unfair to everyone to have to spend the time and effort to come and deal with emotional issues here and [for] the court [to] have to declar[e a] mistrial and have to do it over again." Instead, the district court chose to give the jury a curative instruction.

**{13}** The parties do not dispute that Officer Vasquez's hearsay testimony regarding the purported confession by Defendant constituted an evidentiary error and violated a specific pre-trial order forbidding such testimony. In addition, the State does not dispute that Defendant could have been unfairly prejudiced by Officer Vasquez's improper testimony.

**B.      The Curative Instruction**

**{14}** "[The appellate courts] review a [district] court's denial of a motion for mistrial under an abuse of discretion standard." *State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). The district court abuses its discretion in ruling on a motion for mistrial if it acts in an obviously erroneous, arbitrary, or unwarranted manner, *id.* ¶ 50, or when the decision is "clearly against the logic and effect of the facts and circumstances before the court." *State v. Lucero*, 1999-NMCA-102, ¶ 32, 127 N.M. 672, 986 P.2d 468 (internal quotation marks and citation omitted). In determining whether the district court abused its discretion, we must address whether Officer Vasquez's prejudicial testimony about the purported confession could be cured by the instruction that the district court read to the jury.

**{15}** The State argues that the district court reasonably concluded a curative instruction

was sufficient to remedy the single reference to Defendant's purported confession. The State contends that the record reveals several factors that mitigate potential prejudice and show a mistrial was an extreme, unwarranted measure. These factors include that Officer Vasquez's testimony was not elicited by the prosecutor, Officer Vasquez's misstatement occurred early in the trial, and the subsequent testimony of Agent Gomez established Defendant had not admitted to driving during the collision. Additionally, the State argues that Defendant retained the ability to cross-examine Officer Vasquez regarding the erroneous basis for his statement but chose not to do so. We disagree with the State's assertion that certain mitigating factors existed to cure a mistrial and shall address the numerous errors made by the district court when it ruled otherwise.

{16}    Numerous evidence-based factors support Defendant's argument that the error could not be cured by the district court's instruction to disregard Officer Vasquez's prejudicial testimony about the purported confession that, in fact, was established to be erroneous prior to trial. First, the issue of who was driving the Pontiac at the time of the accident, Defendant or Gonzales, was the most critical issue in the case and highly disputed by the parties. The State was aware of Defendant's consistent statements that Gonzales was the driver at the time of the accident. During its opening statement, the State made it clear that nobody saw who was driving the vehicle, Defendant said Gonzales was driving, and the State intended to prove Defendant was in fact the driver. Second, Gonzales's inculpatory acts of being the first person to exit the driver side of the Pontiac and immediately flee the scene of the accident supported Defendant's statements that Gonzales was the driver at the time of the accident. Gonzales's subsequent death prior to trial complicated the critical issue of who was driving at the time of the accident. Third, at trial, the State's case exclusively relied on circumstantial and inferential evidence to establish that Defendant, not Gonzales, was driving the Pontiac at the time of the accident. This evidentiary background made the purported confession by Defendant to Agent Gomez uniquely prejudicial, especially under the circumstances where Defendant established prior to trial that no such confession occurred.

{17}    Our case law acknowledges that "generally, a prompt admonition . . . to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which might otherwise result." *State v. Armijo*, 2014-NMCA-013, ¶ 9, 316 P.3d 902 (emphasis, alterations, internal quotation marks, and citation omitted) (quoting *State v. Newman*, 1989-NMCA-086, ¶ 19, 109 N.M. 263, 784 P.2d 1006); *see State v. Shoemaker*, 1981-NMCA-151, ¶¶ 7, 9, 11-13, 97 N.M. 253, 638 P.2d 1098 (recognizing that a curative instruction was sufficient to cure any prejudice that occurred when the state attempted to impeach the defendant with a prior indictment that did not result in a conviction). However, one of the exceptions to this general rule arises when "inadmissible testimony [is] intentionally elicited by the prosecution." *State v. Gonzales*, 2000-NMSC-028, ¶ 39, 129 N.M. 556, 11 P.3d 131, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. In such an instance, the general rule does not apply regardless of whether the district court admonishes the jury to disregard the inadmissible testimony. *Gonzales*, 2000-NMSC-028, ¶ 39. On review, this Court "must determine whether there is

6

a reasonable probability that the improperly admitted evidence could have induced the jury's verdict." *Id.* Therefore, prior to determining whether a curative instruction has cured what otherwise would be error, we must first consider whether the inadmissible testimony was intentionally elicited by the State. *See Armijo*, 2014-NMCA-013, ¶ 10.

## C.     Officer Vasquez's Testimony Was Not Intentionally Elicited by the State

**{18}**     Some fault can be attributed to the prosecutor in failing to follow the district court's specific instruction to be "careful with the questions [to Officer Vasquez] and be real specific with him." Almost immediately thereafter, the prosecutor asked an open-ended question regarding Agent Gomez's interview of Defendant at the police station and Officer Vasquez's "next step after that[.]" From a strictly sequential perspective, this next step is important to our review. The State was aware of the "next step" taken by Officer Vasquez. This was the moment when Officer Vasquez erroneously claimed in his written report that Agent Gomez came out of the interview room and purportedly told Officer Vasquez that Defendant had confessed to being "behind the wheel."

**{19}**     The issue is whether the prosecutor intentionally disregarded the district court's direct admonishment to "be careful . . . and . . . specific" at this juncture when the prosecutor immediately gave Officer Vasquez the open-ended opportunity to testify about what in fact happen next—Agent Gomez allegedly telling Officer Vasquez about the purported confession. *See State v. Ruiz*, 2003-NMCA-069, ¶¶ 6-9, 133 N.M. 717, 68 P.3d 957 (recognizing that a prosecutor's questioning can be considered intentional when he walked a key witness right into the testimony that had been suppressed by a motion in limine); *see also State v. Saavedra*, 1985-NMSC-077, ¶ 9, 103 N.M. 282, 705 P.2d 1133 (concluding that an improper prosecutorial motive was established when the prosecutor asked an identical question of the same witness at a grand jury hearing and received identical inadmissible answers each time), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783; *State v. Vialpando*, 1979-NMCA-083, ¶ 23, 93 N.M. 289, 599 P.2d 1086 (holding that a curative instruction was only proper because "the witness's response was totally unexpected by the court and the attorneys"). In fact, Officer Vasquez accurately answered the prosecutor's question regarding the "next step" that occurred in the investigation. Just like the prosecutor in *Ruiz*, the prosecutor walked Officer Vasquez right to the key confession testimony that had been suppressed prior to trial and gave him an open-ended question that, once answered correctly, solicited the suppressed evidence. *See* 2003-NMCA-069, ¶ 7. Like *Ruiz*, there is no record on appeal regarding what the prosecutor was expecting as the answer to the question at issue on this appeal. *See id.* However, the district court's curative instruction included specific language stating that Officer Vasquez's testimony was non-responsive. Based upon the district court's curative instruction, this Court can only infer that the prosecutor expected Officer Vasquez to move on to other aspects of the investigation and avoid any violation of the pretrial order and subsequent admonishments issued by the district court. "Where there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [district] court's judgment." *State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d

7

829 (internal quotation marks and citation omitted). This presumption of correctness cannot be disregarded in this instance. Despite walking the witness right to the line of the suppressed testimony, this Court can reasonably rely on the district court's determination and we are sufficiently persuaded that the prosecutor did not intentionally solicit Officer Vasquez's testimony about the purported confession. *See Ruiz*, 2003-NMCA-069, ¶ 7; *see also Gonzales*, 2000-NMSC-028, ¶ 39 (applying "a different analysis to inadmissible testimony intentionally elicited by the prosecution).

**D.      The Purported Confession Error Was Not Harmless**

**{20}**    Next, we address whether Officer Vasquez's testimony about the purported confession can be overcome by the district court's curative instruction or could otherwise be considered harmless error. When a non-constitutional evidentiary error occurs, the harmless error standard of review only requires reversal if there is a "reasonable probability" the inadmissible evidence contributed to Defendant's conviction. *See State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215 (internal quotation marks and citation omitted). Under this standard of review, a case-by-case analysis is required. *See Tollardo*, 2012-NMSC-008, ¶ 44. Reviewing courts are to evaluate all of the circumstances surrounding the error, including examining the error itself, the source of the error, the emphasis on the error, and whether the error was cumulative or introduced new facts. *Id*. ¶ 43. Evidence of guilt separate from the error may be relevant but may not be the singular focus in determining whether the trier of fact was influenced by the error. *Id*.

**{21}**    In the instant case, the error created by Officer Vasquez's testimony regarding the purported confession was not harmless and was proper grounds for reversal and a new trial. *See State v. McClaugherty*, 2003-NMSC-006, ¶¶ 27, 32-35, 133 N.M. 459, 64 P.3d 486 (recognizing the improperly admitted hearsay statements that went to a critical and highly disputed issue at trial were not harmless and warranted a new trial), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. This Court has explained that "confessions can prejudice 'the jury's thinking on certain issues which it might otherwise have been able to decide objectively.' " *State v. Hardy*, 2012-NMCA-005, ¶ 10, 268 P.3d 1278 (quoting *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U. Pa. L. Rev. 638, 677 (1955)). Thus, a confession can be highly prejudicial and warrants a close examination of the circumstances. Here, the confession Officer Vasquez wrongly referenced struck at the crux of the defense offered at trial—Defendant was not the driver at the time of the collision. Officer Vasquez's testimony claiming that a confession occurred, when it never did, not only undermined Defendant's overall credibility but provided erroneous corroboration for the State's circumstantial evidence regarding who it claimed was driving at the time of the accident.

**{22}**    Furthermore, Officer Vasquez's testimony regarding the purported confession occurred on the afternoon of the first day of trial. The fact that a witness made an improper reference to a confession so early in the course of trial can be difficult to overcome. *See State v. Gutierrez*, 2007-NMSC-033, ¶ 23, 142 N.M. 1, 162 P.3d 156 (concluding that a

8

prejudicial comment made in opening statement "particularly at this stage, is inherently difficult to overcome"). In addition, after Officer Vasquez made the inappropriate comment, the district court immediately excused the jury, without providing any sort of instruction, while the attorneys argued for or against a mistrial. According to the record, the jury was excused for approximately nine minutes, which is ample time for the reference to a confession to take root and fester in the jurors' minds. Only after the jury returned was the curative instruction offered in an attempt to remedy the inappropriate testimony about the purported confession.

**E.     The District Court's Curative Instruction Was Insufficient**

**{23}**     The district court's curative instruction was vague and inaccurate. The district court instructed the jury as follows:

> Ladies and gentlemen, there was an unresponsive statement made by [Officer Vasquez] concerning a confession, there was an objection to that statement. I have sustained the objection and will strike that statement from the record and the jury is instructed to disregard that statement and to not consider it for any purpose.

**{24}**     This instruction was not accurate in two respects. First, as discussed above, Officer Vasquez's statement was in fact responsive to the prosecutor's question of what the officer did next. Officer Vasquez accurately answered the prosecutor with the next sequential act in his investigation—meeting Agent Gomez outside the interrogation room and addressing what was obtained during Defendant's interrogation. Secondly, the district court inaccurately referenced an objection that was sustained—a technical error that was procedurally incorrect and factually contrary to what actually occurred on the record. Immediately after Officer Vasquez's confession statement, the district court sua sponte excused the jury prior to any objection or any other statement by defense counsel. Even once the jury was excused, Defendant did not object to the alleged confession testimony but very specifically moved for mistrial, and the motion for mistrial is what the parties argued while the jury was excused. The district court denied the motion for mistrial and decided to use its curative instruction to the jury. Therefore, two substantive inaccuracies were presented to the jury in the language of the court's curative instruction.

**{25}**     Even if this instruction attempted to accurately cure the error made by Officer Vasquez, it was also vague when it informed the jury of its duty to disregard the improper comment. *See State v. Garcia*, 1994-NMCA-147, ¶ 17, 118 N.M. 773, 887 P.2d 767. Telling the jury to disregard the "unresponsive statement made by the officer concerning a confession" does not inform the jury that the reason to disregard the statement concerning a confession was, in fact, because no confession ever occurred. The fact that a confession never occurred was critical information with regard to the prejudice injected into the trial. Although the district court may have deliberately made the curative instruction vague to avoid further emphasis of Officer Vasquez's improper reference to the purported confession,

9

referencing an objection that never occurred and failing to address the fact that no confession ever occurred was also error. *See id.* (stating that "[i]ndeed, the vagueness was probably intentional, because any direct comment on [the error] posed the risk of emphasizing the matter to the jury"); *see also Gutierrez*, 2007-NMSC-033, ¶ 23 (holding that a vague instruction was insufficient to cure prejudice); *State v. Miller*, 1966-NMSC-041, ¶ 32, 76 N.M. 62, 412 P.2d 240 (holding that a statutory curative instruction would not sufficiently remove the improper impression created by a prosecutor's inappropriate comments regarding the defendant's failure to testify). We recognize that the district court was attempting to address a critical and prejudicial error. Should it tell the jury the truth and re-emphasize the serious prejudice that Officer Vasquez had created or should it hide the true nature of the error by misrepresenting the procedural circumstances that required a curative instruction, as well as the true erroneous nature of the purported confession? These unacceptable choices regarding accuracy and vagueness only reinforce why Defendant's motion for a mistrial should have been granted and could not be cured by the district court's efforts to use a curative instruction.

**{26}**    For the foregoing reasons, we are persuaded that there was a reasonable probability the purported confession and insufficient curative instruction severely prejudiced the jury's thinking and contributed to Defendant's conviction. In addition, a reasonable inference can be drawn from the circumstances that Officer Vasquez's testimony was not accidental. Because the resulting curative instruction was vague and inaccurate, we conclude that the instruction was insufficient in this case, and the district court abused its discretion when it failed to grant Defendant's motion for a mistrial.

## II.    No Prosecutorial Misconduct

**{27}**    We next consider whether prosecutorial misconduct occurred such that double jeopardy bars Defendant's retrial. Prosecutorial misconduct occurs when prosecutorial "improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. In instances of extreme prosecutorial misconduct, double jeopardy may bar a new trial. *See State v. Breit*, 1996-NMSC-067, ¶ 2, 122 N.M. 655, 930 P.2d 792. Under Article II, Section 15 of the New Mexico Constitution, retrial is barred where (1) the official misconduct is so prejudicial that nothing short of mistrial will cure it; (2) "the official knows that the conduct is improper and prejudicial[;]" and (3) "the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal." *Breit*, 1996-NMSC-067, ¶ 32. "When the prosecutor does not intend to provoke a mistrial, the misconduct necessary to bar a retrial must be extraordinary." *State v. Haynes*, 2000-NMCA-060, ¶ 6, 129 N.M. 304, 6 P.3d 1026 (internal quotation marks and citation omitted). Despite walking a witness right to the answer that was the proper basis for mistrial, this Court has previously recognized that remand for a new trial is the appropriate remedy for such an intentional act by a prosecutor. *See Ruiz*, 2003-NMCA-069, ¶¶ 11-12.

**{28}** Defendant argues that Officer Vasquez is also part of the prosecution team when analyzing prosecutorial misconduct that bars retrial. Defendant points out that the State was twice placed on explicit notice that testimony of a confession risked a mistrial. Although Defendant specifically recognizes that no authority extends the double jeopardy analysis regarding prosecutorial misconduct to testifying members of the prosecution team, he asks this Court to recognize such an extension. The State in response highlights that no double jeopardy authority extends the prosecutorial misconduct analysis to testifying members of the prosecution team. The State argues that Officer Vasquez's testimony was an unsolicited, non-responsive comment that should not be attributed to the prosecutor.

**{29}** We agree with the State that, for double jeopardy purposes, New Mexico does not extend a prosecutorial misconduct analysis to witnesses. While police officers are members of the prosecution team for the purposes of disclosure of exculpatory evidence, *State v. Wisniewski*, 1985-NMSC-079, ¶ 21, 103 N.M. 430, 708 P.2d 1031, this Court has rejected the concept's extension to an officer's comments on a defendant's constitutional right to remain silent. *See State v. Herrera*, 2014-NMCA-007, ¶ 22, 315 P.3d 343. We are not persuaded by Defendant's arguments to extend the double jeopardy protection against prosecutorial misconduct to the State's witnesses who inject precluded testimony into the trial. In addition, Defendant failed to provide us with an evidentiary basis clearly attributing Officer Vasquez's improper conduct to the intentions of the prosecutor. *See Breit*, 1996-NMSC-067, ¶ 2 (recognizing that inherent in the bar on retrial is the prosecutor's intent to provoke a mistrial); *Haynes*, 2000-NMCA-060, ¶ 6 (recognizing that the misconduct must be extraordinary when the prosecutor does not intend to provoke a mistrial). Here, the prosecutor mistakenly asked Officer Vasquez an open-ended question, "what was your next step after that in your investigation?" Officer Vasquez utilized this opportunity to improperly testify about the purported confession that had been suppressed. As we previously discussed, the presumption of correctness and reasonable inferences that can be drawn from the district court's curative instruction are sufficient to persuade us that the prosecutor did not intentionally elicit testimony about the purported confession that had been suppressed. Absent a sufficient record to establish this intent element for prosecutorial misconduct, double jeopardy does not bar a retrial of Defendant.

## III. Sufficiency of the Evidence to Justify Retrial

**{30}** Finally, we consider whether the State put forth sufficient evidence to convict Defendant of the charges and justify a second trial. *State v. Consaul*, 2014-NMSC-030, ¶ 41, 332 P.3d 850 (noting well-established precedent that "[t]o avoid any double jeopardy concerns, we review the evidence presented at the first trial to determine whether it was sufficient to warrant a second trial"). In reviewing the sufficiency of the evidence, this Court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{31}** Defendant argues that the State failed to prove beyond a reasonable doubt that

Defendant was actually driving the car at the time of the collision, particularly because Gonzales's own conduct implicates him as the driver. Defendant asserts that the remaining evidence only proves the mere possibility that Defendant drove and is thus insufficient to overcome the inference that Gonzales was driving. Additionally, Defendant argues there was insufficient evidence of recklessness. We disagree with Defendant. As this Court must view the evidence in the light most favorable to the State, disregarding contrary evidence and inferences, we conclude that there was sufficient evidence to support Defendant's convictions. *See id.*

**{32}** A rational jury could have found beyond a reasonable doubt that Defendant was the driver of the Pontiac at the time of the collision. There were two people inside the Pontiac at the time of the collision, Defendant and Gonzales. Nobody directly saw who was driving at the time of the accident, and Defendant consistently told witnesses and the investigating officers that Gonzales was the driver. The jury thus had to infer, from the evidence, which person inside the Pontiac was driving. Because the jury was free to reject Defendant's version of the facts, the contrary evidence and inferences did provide a sufficient factual basis for the jury to determine that Defendant was the driver at the time of the accident. *See State v. Astorga*, 2015-NMSC-007, ¶ 57, 343 P.3d 1245. This evidence includes inconsistent statements from Defendant as to whether and when Gonzales switched to become the driver. Evidence was also presented showing that Defendant was observed with injuries on the left side of his body, and the State's expert testimony opined that these injuries would be consistent with Defendant being in the driver's seat at the time of the accident. The DNA evidence taken from the vehicle after the accident was negative for Gonzales on the driver's side of the Pontiac and negative for Defendant on the passenger's side of the vehicle. In addition, when Defendant was audio taped while talking to a visitor at the jail, he was heard using the first person to describe his actions during the accident, thus also implying that he was the driver. Viewing all the circumstantial evidence in the light most favorable to the State, sufficient evidence was presented at trial to convict Defendant of the homicide by vehicle and great bodily harm by vehicle charges.

**{33}** As to the sufficiency of the evidence regarding reckless driving and the element of recklessness, the facts of the collision as well as trial testimony provide sufficient evidence to conclude that the driver of the Pontiac showed a "willful or wanton disregard of the rights or safety of others." Section 66-8-113(A). With another vehicle approaching on a major interstate at highway speeds, the driver of the Pontiac slowly cut across all lanes of travel in a nearly horizontal direction, causing the Pontiac to collide with the Smiths' Suzuki. In addition, a police officer testified that the Pontiac's driver was "reckless" when making this maneuver and used this precise language. Thus, a rational jury could have also found beyond a reasonable doubt that the Pontiac driver was reckless. Based on the foregoing, sufficient evidence was presented to support the recklessness element of Defendant's convictions.

## IV.    Defendant's Remaining Claims of Error

**{34}** As a result of our reversal and remand for a new trial, we determine that it is

12

unnecessary for this Court to address any of Defendant's remaining assertions of error. *See State v. Vallejos*, 1994-NMSC-107, ¶ 13, 118 N.M. 572, 883 P.2d 1269.

**CONCLUSION**

**{35}** For the reasons stated in this opinion, we reverse Defendant's convictions for homicide by vehicle, great bodily harm by vehicle, and reckless driving. We remand for a new trial consistent with this opinion.

**{36}    IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**M. MONICA ZAMORA, Judge**