This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40079

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**KELVIN RUFFIN,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jennifer Wernersbach, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Van Snow, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** The State of New Mexico appeals the district court's grant of a motion to dismiss and bar retrial following a mistrial. The State argues that the district court erred in granting Defendant's motion because the prosecutor did not commit prosecutorial misconduct. We agree and reverse.

## BACKGROUND

**{2}** A criminal complaint was filed in the district court charging Defendant with attempted murder, along with two counts of aggravated battery with a deadly weapon against victims Robert and Julie Ponce. The district court excluded Robert from testifying because he failed to cooperate with pretrial interviews. Despite his exclusion as a witness prior to trial, the State requested that Julie be able to identify Robert, her husband, while testifying. The district court agreed, though it instructed the State to tell Robert "not to say anything or pull up his shirt or anything like that"—an apparent reference to the location of Robert's injuries—and to "make sure you're clear that he doesn't make any statements—that'll be a clear mistrial—or gestures or any of those kinds of things." During trial, the district court reiterated that "[Robert] is certainly not prohibited from coming into the courtroom . . . but he cannot stand, I don't want him to make any gestures, I don't want him to say anything." "If he does any of those kinds of things it'll be a mistrial in this case, and that will be attributed to the State, and it'll be dismissed with prejudice." The State agreed, and both prosecutors instructed Robert to do nothing while Julie testified.

**{3}** As permitted, Julie identified Robert on the stand during her direct examination. Trouble arose, however, when the State subsequently called her as a rebuttal witness. During that testimony, the court and parties held a bench conference outside of the courtroom. As a juror's note later informed the judge, while the judge and attorneys were outside the courtroom, Robert arose and made a thumbs-up gesture—in the presence of the jury—to Julie who remained on the witness stand. After speaking with the juror who sent the note, the district court ultimately declared a mistrial over the State's objection. The court initially determined the mistrial was "not really the fault of the State." Defendant later filed a motion to bar retrial based on prosecutorial misconduct under *State v. Breit*, 1996-NMSC-067, ¶ 32, 122 N.M. 655, 930 P.2d 792, which the district court granted, determining that "[t]he State was negligent in controlling or monitoring [Robert]." In doing so, it "rescinded" its prior determination of "manifest necessity."

## DISCUSSION

**{4}** "An appellate review of a prosecutorial misconduct claim presents a mixed question of law and fact." *State v. McClaugherty*, 2008-NMSC-044, ¶ 39, 144 N.M. 483, 188 P.3d 1234. "The appellate court will defer to the district court when it has made findings of fact that are supported by substantial evidence and reviews de novo the district court's application of the law to the facts." *Id.*

**{5}** Retrial of a criminal defendant is barred following a mistrial, retrial, or reversal due to prosecutorial misconduct after satisfying the three-prong test outlined in *Breit*:

> [W]hen improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial, and if the official knows that the conduct is improper and prejudicial, and if the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal.

1996-NMSC-067, ¶ 32. The district court's determination that the three *Breit* factors barred retrial rested either on Robert's conduct or the State's failure to control Robert's conduct. We conclude that, to the extent that the district court relied on Robert's violation of the order, the first element is lacking because there is no official conduct involved. Further, to the extent that the district court relied on the State's failure to enforce compliance with the order, element three was not satisfied because negligence does not constitute prosecutorial misconduct. We begin by considering the *Breit* factors in the context of Robert's conduct.

**Improper Official Conduct**

{6}    The district court's order barring retrial was insufficient as to the first *Breit* prong because it improperly attributed Robert's actions to the State. As a threshold matter, the *Breit* test requires "improper *official* conduct." *Id.* (emphasis added). Our Supreme Court recently clarified this central requirement, holding that the same *Breit* test also applies even to the conduct of judges. *See State v. Hildreth*, 2022-NMSC-012, ¶ 22, 506 P.3d 354 (citing *United States v. Dinitz*, 424 U.S. 600, 611 (1976) (emphasizing the necessity of "governmental actions" to invoke double jeopardy concerns over multiple prosecutions)). Our Court has previously declined to extend prosecutorial misconduct analysis to law enforcement witnesses for the state, even when the state was placed on "explicit notice" that testimony risked mistrial. *See State v. Hernandez*, 2017-NMCA-020, ¶¶ 28-29, 388 P.3d 1016 ("New Mexico does not extend a prosecutorial misconduct analysis to witnesses."). This guidance thus limits our analysis to the conduct specifically of prosecuting attorneys and judges. Robert's individual actions thus cannot form the basis of prosecutorial misconduct; only the prosecution is under scrutiny.

{7}    To the extent that Defendant asserts that a nonwitness's actions can nonetheless be imputed to the State, we are unpersuaded. Defendant argues that Robert's actions can be imputed to the State, despite *Hildreth*'s contrary directive, because here the district court declared that any gesture by the victim would provoke a mistrial attributable to the State. But the mere fact that the district court stated its intention to hold the State responsible for a mistrial occasioned by the actions of Robert does not establish its authority to do so. Rather, the guidance of precedent resolves such unfortunate trial moments, and whether it is appropriate to blame one party, or the other, or the court itself. Insofar as the district court's order directly declared its intention to impute Robert's possible behavior to the State ahead of its occurrence for prosecutorial misconduct purposes, and then did so when that fear came to pass, such was improper under *Hildreth* because Robert is not a government actor. *See* 2022-NMSC-012, ¶ 22. As well, there was no indication whatsoever, as the district court itself initially concluded in determining the State was "not really to blame" for Robert's shenanigan, that Robert did what he did at the behest of the State.

{8}    Defendant next contends that the State's acquiescence to the district court's order permitting Robert in the courtroom made Robert a member of the prosecution team. But New Mexico generally defines the prosecution team as the individual

prosecutor, the prosecutor's entire office, and any law enforcement personnel or state agents involved in investigating the case. *Case v. Hatch*, 2008-NMSC-024, ¶ 46, 144 N.M. 20, 183 P.3d 905. As a nontestifying, non-law enforcement victim, Robert does not fall into this classification—he was but a spectator. Nothing about the district court's order redefines, or could have legally redefined, Robert to be a member of the prosecution team. In any event, we have previously decided that prosecution witnesses cannot commit prosecutorial misconduct barring a defendant's retrial on double jeopardy grounds. *See Hernandez*, 2017-NMCA-020, ¶ 29; *State v. Herrera*, 2014-NMCA-007, ¶ 22, 315 P.3d 343. In both *Hernandez* and *Herrera*, we reviewed the prosecutor's direct actions for misconduct rather than those of the testifying law enforcement officer. *See Hernandez*, 2017-NMCA-020, ¶ 19; *Herrera*, 2014-NMCA-007, ¶ 22.

**{9}** In light of *Hildreth*, and the other cases cited herein, we are unpersuaded by Defendant's arguments seeking to impute a nonwitness's behavior to the State.

**Negligence as Misconduct**

**{10}** We now turn briefly to Defendant's claim that the third *Breit* factor is satisfied by the State's "negligent control" of the alleged victim. Prosecutorial misconduct, under *Breit*'s third prong, also requires "willful disregard of the resulting mistrial, retrial, or reversal." 1996-NMSC-067, ¶ 32. The Court in *Breit* deliberately chose the term "willful disregard" because it "connotes a conscious and purposeful decision by the prosecutor to dismiss any concern that his or her conduct may lead to a mistrial or reversal." *Id.* ¶ 34. The prosecutor must be "actually aware, or is presumed to be aware, of the potential consequences of his or her actions." *Id.* Barring retrial due to prosecutorial misconduct "applies only in cases of the most severe prosecutorial transgressions." *McClaugherty*, 2008-NMSC-044, ¶ 25 (internal quotation marks and citation omitted).

**{11}** In *Breit*, our Supreme Court found "willful disregard" after the prosecutor engaged in improper arguments with witnesses, directed belligerent remarks at opposing counsel, belittled the defendant's right to remain silent, argued the burden of persuasion shifted to the defendant during closing argument, and made statements implying his personal belief in the defendant's guilt. *See Breit*, 1996-NMSC-067, ¶¶ 42-43, 48. In *McClaugherty*, our Supreme Court clarified that a single event can constitute misconduct that deprives the defendant due process of law, but in that case the conduct was "[the prosecutor's] introduction of nonexistent evidence at worst, or at best, inadmissible hearsay through his cross-examination questions." 2008-NMSC-044, ¶¶ 60, 72. The prosecutor in *McClaugherty* attempted to use third-party statements that allegedly included the defendant's admission of murder, despite not disclosing them to the defense or even proving that the third parties ever made the statements. *See id.* ¶ 41. Indeed, the Court "decline[d] the . . . invitation to find that [the prosecutor] was a credible witness" regarding the existence of the statements. *Id.* ¶ 57.

**{12}** In this case, the district court declared a mistrial because the State was "negligent in controlling or monitoring [Robert] to ensure that he was not in the

courtroom beyond the limited scope authorized by the court." In support, the district court also explained that "[d]espite knowing the risks associated with [Robert's] presence in the courtroom, the State failed to act when [Robert] returned to the courtroom." According to the district court, "[t]he State could have simply instructed [Robert] to exit the courtroom when he returned the first time or when he returned the second time, but failed to do so." Defendant contends that the State had a "duty to ensure Robert's compliance with the order." In response, the State argues that its prosecutors' repeated attempts to communicate to Robert the importance of proper conduct was sufficient to comply with the court's order.

**{13}** Applying the law of *Breit* to the district court's findings of fact, we are unpersuaded that the State's acts rose to the degree of willful disregard, the applicable standard for prosecutorial misconduct despite the district court's reference to the lesser standard of negligence. *See Breit*, 1996-NMSC-067, ¶ 34. When the district court considered mistrial sua sponte, the prosecutor objected because both State attorneys had admonished Robert to do "absolutely nothing." The district court found that the State attorneys even informed Robert to be "like a statue" when Julie was called for her rebuttal testimony. Even if the State's actions towards Robert did constitute negligence, that simply is not the standard for prosecutorial misconduct. We remain unpersuaded that any assertion of negligence on the State's part could amount to prosecutorial misconduct.

**Retrial**

**{14}** The district court's order to bar retrial revoked its prior finding regarding "manifest necessity." The State argues that double jeopardy is not a concern at a potential retrial—even without a finding of manifest necessity—because Defendant consented to the mistrial. Defendant, on the other hand, argues that he should not be "punished" for the mistrial that he attributes to the State.

**{15}** "When a mistrial is declared *over a defendant's objection* and the jury is discharged, the double jeopardy protection generally prohibits a defendant from being retried for the same offense unless the mistrial was found to have been declared for reasons of manifest necessity." *State v. Yazzie*, 2010-NMCA-028, ¶ 10, 147 N.M. 768, 228 P.3d 1188 (emphases added) (internal quotation marks and citation omitted). However, "[o]ur Supreme Court has long recognized that manifest necessity and consent independently remove the double jeopardy bar to retrial ordinarily applicable when a defendant's trial is prematurely terminated." *State v. Paul*, 2021-NMCA-041, ¶ 20, 495 P.3d 610. "Permitting retrial where a defendant has consented thus safeguards the defendant's interest in obtaining a verdict reached through the honest convictions of jurors seated to hear the defendant's case without frustrating society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Id.* ¶ 19 (internal quotation marks and citation omitted).

**{16}** In this case, Defendant consented to the mistrial by arguing in favor of it at the district court's sua sponte hearing. Despite the district court altering its prior

determination regarding manifest necessity for purposes of retrial, Defendant's consent permits a retrial without invoking double jeopardy concerns.

**CONCLUSION**

**{17}** For the above reasons, we reverse and remand for retrial.

**{18}  IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**KATHERINE A. WRAY, Judge**